AMERICAN EXCH. NAT. BANK v. AMERICAN HOTEL VICTORIA CO. et al.

(Supreme Court, Appellate Division, First Department. April 7, 1905.)

NEGOTIABLE INSTRUMENTS—NOTICE OF DISHONOR—SERVICE.

Negotiable Instrument Law (Laws 1897, p. 740, c. 612) §§ 167, 168, provide that notice of dishonor, to charge an indorser, may be given by delivering it personally or through the mail, either to the party himself, or to his agent in that behalf. *Held*, that testimony of a witness that he served notice on a corporation conducting a hotel by leaving the notice at the cashier's window did not show sufficient service; it not appearing that the attention of any one was drawn to the notice, and the president and manager of the company having testified that no such notice was brought to his attention.

[Ed. Note.—For cases in point, see vol. 7, Cent. Dig. Bills and Notes, §§ 1138, 1154–1159.]

Appeal from Trial Term, New York County.

Action by the American Exchange National Bank against the American Hotel Victoria Company and another. From a judgment in favor of plaintiff, defendant hotel company appeals. Reversed.

Argued before VAN BRUNT, P. J., and McLAUGHLIN, PATTERSON, INGRAHAM, and LAUGHLIN, JJ.

R. Neil Burgess, for appellant.
Robert Forsyth Little, for respondent.

LAUGHLIN, J. The action is against Charles M. Reed, the maker, and the appellant, as the indorser, of a promissory note payable to the order of Costikan Freres. The complaint alleges that the appellant duly indorsed the note prior to maturity, having received full value therefor, and delivered the same to the payee for full value; that the payee subsequently and before maturity, for full value, duly indorsed and delivered the note to the plaintiff; that the note was duly presented for payment at the First National Bank of Erie, Pa., where it was made payable, and payment thereof duly demanded and refused, whereupon it was duly protested for nonpayment, and that notice thereof was forthwith duly given to all of the indorsers. The answer of the appellant put in issue, among other things, the allegations of the complaint concerning notice to it of the presentation of the note for payment, the demand and refusal of payment, and of the protest. The plaintiff proved the making and indorsement of the note, the delivery to it, and offered the note in evidence with the notary's certificate show-

ing that he protested it for nonpayment on the 14th day of October, 1901, the day it fell due. For the purpose of proving the service of the notice of protest on the appellant, the plaintiff called one Mairs, who testified that on the 16th day of October, 1901, he served an original notice of protest made by the notary at Erie, Pa., on the 14th, and addressed: "To American Hotel Victoria Co. S. B. A. Price, Prest."—upon the appellant at the Victoria Hotel, Broadway and Twenty-Seventh street, by leaving it "at the cashier's window." He does not show that the cashier or any one else was present or that he drew the attention of any one thereto, or that he made any effort to find any officer of the defendant, or any one in charge of the hotel, to whom to deliver it. The defendant called Mr. Sweeney, who testified that he was elected president of the defendant and purchased its capital stock on the 2d of January, 1901, and continued to be president down to the time of the trial; that he had charge of the management of the business of the appellant and of the hotel during the same period, and on the 16th day of October, 1901; that he did not see or receive any notice of the protest or dishonor of the note, and the first he knew of the existence of the note, or heard of it, was when he received a letter from attorneys stating that they had the note for collection; and that, unless it was paid within a certain time, action would be brought thereon. At the close of the evidence, counsel for the appellant moved to dismiss the complaint upon the ground, among others, that the plaintiff had failed to prove notice to it of the dishonor of the note. The motion was denied, and an exception taken.

We are of opinion that the judgment must be reversed. The appellant is sued solely as indorser of this note. The evidence is wholly insufficient to show the service of the notice of protest upon it. Negotiable Instruments Law, §§ 167, 168 (Laws 1897, p. 704, c. 612), provide that notice of dishonor, to charge an indorser, may be given by delivering it personally or through the mail either to the party himself, or "to his agent in that behalf." This doubtless was not intended to change the rule as it theretofore existed. Eaton & Gilbert on Commercial Paper, 489. Where personal service is relied upon, the evidence must show either actual personal service, or an ordinarily intelligent, diligent effort to make personal service, upon the indorser, either at his place of business during business hours, or at his residence if he have no place of business; but, if he be absent, it is not necessary to call a second time, and the notice may in that event be left with any one found in charge, or, if there be no one in charge, or no one there, then the giving of notice is deemed to be waived. Stewart v. Eden, 2 Caines, 121, 2 Am. Dec. 222; Bank of Commonwealth v. Mudgett, 45 Barb. 663; Id., 44 N. Y. 514; N. Y. & Alabama Contracting Co. v. Selma Savings Bank, 51 Ala. 305, 306, 23 Am. Rep. 552; Allen v. Edmondson, 2 Exch. Rep. 718; Williams v. Bank of U. S., 2 Pet. 96, 7 L. Ed. 360; Huffcut's Negotiable Instruments, p. 47. The evidence in this case shows that personal service was not made upon any officer of the corporation, and there is no evidence that the notice was left with any agent of the corporation, or even where it might be reasonably inferred that an officer or agent of the corporation would receive it.

It does not even appear upon what floor or in what part of the hotel the cashier's window was, at which the notice was left. There can be no inference from such evidence that the notice was received by the corporation, and the president and manager of the hotel, who was in charge, testifies that it was not brought to his attention.

It follows, therefore, that the judgment and order appealed from should be reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur.