MELWIN CONSTRUCTION COMPANY,
Inc., a corporation, Appellant,

v.

STONEWALL CONSTRUCTION COM-
PANY, a Maryland Corporation,
Appellee.

No. 1606.

Municipal Court of Appeals for the
District of Columbia.

Argued Feb. 21, 1955.

Decided April 4, 1955.

Rehearing Denied April 20, 1955.

Carl W. Berueffy, Washington, D. C., with whom Melville W. Feldman, Washington, D. C., was on the brief, for appellant.

Mark P. Friedlander, Washington, D. C., for appellee.

Before CAYTON, Chief Judge, and HOOD and QUINN, Associate Judges.

QUINN, Associate Judge.

This litigation arose from a construction subcontract between the contractor Melwin Construction Company, Inc., and the subcontractor Stonewall Construction Company. Under the terms of the subcontract, Stonewall was to perform a certain amount of construction work for $4,000. Appellee, alleging that only $3,000 of this amount had been paid, brought suit to recover the balance of $1,000 and also for $930.04 for additional work performed not contemplated in its subcontract.

Appellant admitted the existence of the subcontract and that $3,000 had been paid. However, in a counterclaim it alleged that appellee had failed to complete the work according to the requirements of the subcontract; that this failure necessitated appellant expending a certain amount of monies to complete the job; and that appellee's failure to complete the work within the period of time specified in the subcontract resulted in further damages to appellant which should be computed under a liquidated damages provision set forth in the subcontract.

The court, sitting without a jury, found for appellee in the sum of $1,930.04, and also found for appellee on the counterclaim. Judgment was entered in accordance with the findings and appellant appeals therefrom.

The record reveals that appellant had contracted with the United States to construct a can testing and storage building, a lunch room and a change house at the Naval Powder Factory, Indian Head, Maryland. Subsequently, on August 24, 1953, the subcontract in question was entered into whereby appellee was to complete "construction of all road work, embankments and culverts, including, but not limited to, installation and furnishing of pipes for culverts." The

project undertaken by appellee was to be performed in accordance with the plans and specifications of the original contract between appellant and the government. In the subcontract was a provision requiring appellee's completion of the work within 45 days after notice to proceed. Notice was received on August 26, 1953, and appellee commenced with the work.

The president of appellee corporation testified that the work on this job was completed in the early part of January 1954, thus conceding that a period in excess of four months transpired between the date of the notice to proceed and the date of completion. However, it is urged by appellee that any delay in the progress and completion of the project can be attributed to acts of appellant and to another subcontractor for whom appellant was responsible. Further, appellee contends that the provision in the subcontract requiring completion of the work within 45 days after notice to proceed was intended to mean "working days" and inasmuch as the project was completed in 36½ work days, plus six days for the additional work undertaken at the request of appellant, it cannot be said that appellee exceeded the time allotted for completion. In support of this latter contention there was evidence to indicate that inclement weather prevented the construction work from proceeding on various days.

Appellant first assigns as error the failure of the trial court to award liquidated damages in view of appellee's noncompliance with the provision requiring completion of the work within 45 days of notice to proceed. We do not deem it necessary to construe the validity of the liquidated damages provision in the subcontract as the record reveals sufficient evidence to merit the finding that any delay or excess time taken by appellee in the completion of the work was, to say the least, partly attributable to appellant or to individuals for whom it was responsible. It is basic that the subcontractor can not be held liable under the liquidated damages clause if its failure to complete the project within the time limitation was wholly due to the acts of

appellant in delaying the work or if strict performance of the project was prevented by appellant's want of readiness to accept the work to be furnished.[1]

The Robert Eagen Company, also awarded a subcontract by appellant, was hired to do the plumbing work and was, among other things, to dig various ditches for water lines. This work had to be completed in order for appellee to continue with its performance. The plumber's failure to fulfill this undertaking with diligence resulted in a stoppage of appellee's performance. One of the daily progress reports of the government, dated October 26, 1953, indicates "the plumbing contr. [Eagen] has worked very little on this job. The excavating contr. [appellee] has been unable to work due to the plumber not working." As a result of this difficulty appellant requested appellee to perform the plumber's duties and in a letter dated November 25, 1953, stated, "* * * We have been informed by Robert Eagen Company that they made arrangements with you to do the back filling and tamping for which we are guaranteeing payment. In view of this, there is no valid excuse other than the weather for your not performing."

Not only did a person for whom appellant was responsible delay appellee's performance, but also additional work was undertaken by appellee at appellant's request. There is no denial by appellant that extra work was requested of appellee on the can testing building, the change house and the lunch room. The only objection with respect to the extra work performed by appellee is to the amount charged for same.

■■ The question of whether the acts of the party insisting on the strict operation of the time clause had in turn helped to cause the delay being one of fact,[2] and the trial court finding this to be a fact, the basic question presented is whether, when the original contractor is shown to have caused some delay or lengthening of the work, he may still hold the subcontractor for any balance of the delay not shown to have been so caused. In accordance with the prevailing rule applied in the majority of courts we rule that when the appellant, either by its own acts or those of persons for whom it was responsible, caused delay in the progress of the work, and there being no subsequent agreement between the parties as to an extension of time to offset the delay, the 45-day limit and the liquidated damages provision were nullified, leaving appellee subcontractor only with the obligation of completing the project within a reasonable time.

■ The rule is succinctly stated in Gogo v. Los Angeles County Flood Control Dist., 45 Cal.App.2d 334, 114 P.2d 65, 70, where the court said, "The correct rule is that where such delays are occasioned by the mutual fault of the parties the court will not attempt to apportion them but will refuse to enforce the provision for liquidated damages."[3] Sound reasoning for this general rule is set forth in Champlain Const. Co. v. O'Brien, C.C.D.Vt., 117 F. 271, 277, wherein it was stated, "There is no way for summing up the defaults of each and apportioning the damages to them, but the whole must be allowed or none; and, as all cannot be, none must be."

■ As to the question of bad weather, we find ample evidence in the record to justify the conclusion that although the project was undertaken during the late summer of 1953 and undoubtedly could have been completed prior to any severe wintry weather, the resulting delay caused by appellant, or by those for whom appellant was responsible, necessitated a prolongation of the project not foreseen by appellee in its original estimate of time needed and therefore encumbered the construction work with

1. District of Columbia v. Camden Iron Works, 15 App.D.C. 198, affirmed 181 U.S. 453, 21 S.Ct. 680, 45 L.Ed. 948; Karrick v. Rosslyn Steel & Cement Co., 58 App.D.C. 89, 25 F.2d 216; 9 Am. Jur., Building and Construction Contracts, § 50; 17 C.J.S., Contracts, § 505.

2. Walter D. Watson & Co. v. Graves Elevator Co., 202 App.Div. 10, 195 N.Y.S. 525.

3. See also Williston on Contracts (Rev. Ed.) § 789.

unanticipated winter conditions. For this, appellant bears the loss, if any. At this point it should be noted that appellant never paid any penalties to the government on their original contract as a result of the delay but obtained an extension of their time limitation and secured a waiver of any penalties.

Appellant's last two assignments of error relate to the finding of the trial court that appellee completed performance of the contract and the refusal of the trial court to allow appellant recovery for amounts claimed to be incurred in completing the work left unfinished by appellee. This court has held that questions in a contract dispute pertaining to the nature and extent of performance are factual in nature and "we have no right to reweigh the evidence." [4] These questions of fact being decided adverse to appellant, we find no basis for altering the lower court's decision.

Affirmed.

4. Potts v. Catterton, D.C.Mun.App., 82 A.2d 133, 134.